---

| | | |
|---|---|---|
| **NATU BAH, DIARIOU DIALLO,** | ) | |
| **FATOUMATA DIALLO,** | ) | |
| **AICHA TCHALIM, MARIAMA CIRE** | ) | |
| **SOW, BUILGUISSA DIALLO DIENA** | ) | |
| **DIALLO, and ASIA BINTU KEBE,** | ) | |
| individually and the **ASSOCIATION** | ) | |
| **OF AFRICAN HAIR BRAIDERS OF** | ) | |
| **MEMPHIS TENNESSEE, INC.,** | ) | |
| on behalf of and for the benefit of | ) | |
| concerned and similarly situated | ) | |
| members, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | No.- 13-2789-STA-dkv |
| | ) | |
| **THE ATTORNEY GENERAL OF** | ) | |
| **TENNESSEE; LINDA COLLEY,** | ) | |
| in her Official Capacity; **NINA** | ) | |
| **COPPINGER, in her Official Capacity;** | ) | |
| **JUNE HUCKEBY, in her Official** | ) | |
| **Capacity; PEARL WALKER-ALI,** | ) | |
| in her Official Capacity; **RUFUS** | ) | |
| **HEREFORD, in his Official Capacity;** | ) | |
| **JUDY McALLISTER, in her Official** | ) | |
| **Capacity; MURIEL SMITH, in her** | ) | |
| **Official Capacity; COURTNEY** | ) | |
| **WILLIAMS, in her Official Capacity,** | ) | |
| as present or former members of | ) | |
| **THE TENNESSEE STATE BOARD OF** | ) | |
| **COSMETOLOGY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Defendants' Motion to Dismiss (D.E. # 20) filed on February 10, 2014. Plaintiffs have filed a response in opposition (D.E. # 23), and Defendants have filed a reply brief (D.E. # 28). The briefing on Defendants' Motion is now complete, and the Motion is ripe for disposition. For the reasons set forth below, Defendants' Motion is **GRANTED**.

## BACKGROUND

The Court accepts the following well-pleaded allegations of the Amended Complaint as true for purposes of the instant Motion. Plaintiffs are practitioners of traditional African hair braiding and members of the Association of African Hair Braiders of Tennessee. (Am. Compl. ¶¶ 14–23.) The term "African hair braiding" is a cultural art that is unique to African natives. (*Id.* ¶ 29.) It refers to braiding, locking, twisting, weaving, and cornrowing or otherwise physically manipulating hair without the use of chemicals that alter the physical characteristics of the hair. (*Id.*) African hair braiding is a labor-intensive process, usually taking a single stylist 8 to 12 hours to complete and is unique and distinctive from hair braiding taught in schools operated by the State of Tennessee. (*Id.* ¶ 30.)

African hair braiding is so called because it is has distinct geographic, cultural, historical, and racial roots. (*Id.* ¶ 31.) African hair braiding techniques originated many centuries ago in Africa and were brought by Africans into this country, where they have endured and have been expanded upon as a distinct and popular form of hair styling primarily done by and for persons of African descent.

(*Id.*) African hair braiding continues to be part of the culture in Africa today. (*Id.*) All of the Plaintiffs' are part of the culture from which African hair braiding originated and continues to be practiced to this day. (*Id.*) African hair braiding is typically performed on hair that is physically different, alternatively described as tightly textured or coily hair. (*Id.* ¶ 32.) This physical difference is genetically determined to be in close correlation with race. (*Id.*) In the United States, African hair braiding is most popular with men and women of African descent, who tend to have more textured hair. (*Id.*) For many of these individuals, the choice of African hair braiding (rather than some of the mainstream styles taught in cosmetology schools) is as much a cultural statement and expression of self-identity as it is simply an aesthetic concern. (*Id.*)

Often persons of African descent learn to braid textured hair as children or teens, usually by first learning to do their own hair or that of friends and relatives. (*Id.* ¶ 33.) All of the Plaintiffs in this case learned to braid hair in their native country of Africa and brought this knowledge with them to the United States. (*Id.*) The concept of "natural" hair care has a particular meaning for many African Americans because for many years Western culture pressured African Americans to use chemicals or heat to straighten their hair. (*Id.* ¶ 34.) African hair braiding provides an alternative to current "corrective" measures prevalent in cosmetology schools and instead works with a person's natural hair texture. (*Id.*) Because the use of chemicals is anathema to African hair braiding techniques, African hair braiding techniques are safe for practitioners and customers. (*Id.* ¶ 35.) Indeed, for many women with textured hair, natural hair braiding provides a reprieve after years of harsh chemical treatment of their hair. (*Id.*) For example, sodium hydroxide, the active ingredient in many hair straighteners, has a high incidence and intensity of chemical burns because it is very caustic. (*Id.*) While African hair braiding uses no chemicals to change textured hair, the effects of

3

African hair braiding vary greatly. (*Id.* ¶ 36.) Braiding can either enhance the versatility of the natural hair or make the hair appear straight or curly, long or short, differently textured or colored, without affecting the patron's hair texture. (*Id.*)

The Association of African Hair Braiders of Tennessee, Inc. was incorporated under the laws of the State of Tennessee on July 9, 2013, in response to the requirement that African hair braiders in Memphis and Shelby County, Tennessee, are forced to pursue unnecessary, time-consuming, and costly training and instruction for the purpose of attaining natural hairstylist cosmetology licenses from the State of Tennessee. (*Id.* ¶ 21.) Plaintiffs seek to offer African hair braiding services, and no other cosmetology services, in Memphis and Shelby County. (*Id.* ¶ 23.) Plaintiff Deinbou Diallo has a natural hair stylist cosmetology license issued by the State of Tennessee. (*Id.* ¶ 24.) Ms. Diallo offers traditional African hair braiding services at 3694 S. Mendenhall, Memphis, Tennessee 38115. (*Id.*) Ms. Diallo has operated a business offering traditional African hair braiding services since 2003. (*Id.*) In or around January 2013, Ms. Diallo was issued a citation for, among other things, allowing unlicensed employees working under her supervision to engage in African hair braiding for compensation. (*Id.*)[1]

In order to become licensed to engage in the cultural art of African hair braiding in the state of Tennessee, Plaintiffs and other similarly situated members of the Association of African Hair

---

[1] According to the Amended Complaint, Plaintiff Buliguissa Diallo has a Tennessee natural hair stylist cosmetology license as well and offers traditional African hair braiding services at 4045 American Way Dr., Memphis, Tennessee 38118. (*Id.* ¶ 25.) Ms. Diallo has operated a business offering traditional African hair braiding services since 2002. (*Id.*) Plaintiff Asia Binta Kebe offers traditional African hair braiding services at 4880 Summer Avenue, Memphis, Tennessee 38122, and has operated a business offering traditional African hair braiding services since 2006. (*Id.* ¶ 26.) The Amended Complaint does not allege that either Ms. Buliguissa Diallo or Ms. Kebe were cited for allowing unlicensed employees to engage in traditional African hair braiding for profit.

Braiders of Memphis Tennessee, Inc. are required to obtain 300 clock hours of training in a trade they have practiced since childhood and which is very much a part of their culture. (*Id.* ¶ 27.) Plaintiffs who engage in African hair braiding without the proper license face fines and penalties of up to $1,000.00 per violation and a Class B misdemeanor charges. (*Id.*) Defendant Tennessee State Board of Cosmetology was established and authorized by the Public Acts 491 effective in 1974 for the purpose of regulating cosmetologists in the State of Tennessee. (*Id.* ¶ 28.) Defendant Board Members are authorized to issue licenses and to discipline persons deemed to be in violation of the Cosmetology Act, including the Plaintiffs and other persons who reside in Memphis, Shelby County Tennessee. (*Id.*)

The Tennessee State Cosmetology Licensing Act ("the Act") is codified at Tenn. Code Ann. §§ 62–4–101, et seq. (*Id.* ¶ 39.) Tenn. Code Ann. § 62–4–103(a) and §62–4–105(e ) grants the Tennessee State Cosmetology Board ("the Board") enforcement responsibility for the Act, including authority to enforce the Act's licensing requirements. (*Id.* ¶ 40.) The Board has authority to prescribe, adopt, and enforce rules to administer the Act. (*Id.*) The Board is composed of seven practitioners within the regulated industry and two members of the public. (*Id.* ¶ 41.) The Board has determined that the Act requires individuals engaged in the practice of African hair braiding for compensation to obtain, at a minimum, a natural hair stylist cosmetologist license. (*Id.* ¶ 42.) Tenn. Code Ann. §§ 62–4–102 and 62–4–108 require a person to obtain a license to "engage in the practice of . . . cosmetology," and defines a natural hair stylist as "[a] person who uses techniques which result in tension on hair strands such as twisting, wrapping, weaving, extending, locking or braiding of the hair by hand or mechanical appliances, which work does not include the application of dyes, reactive chemicals or other preparations to alter the color or straighten, curl or alter the structure of

the hair." (*Id.* ¶ 43.)[2]  Tennessee State Board of Cosmetology Rule 0440-1-03 requires 300 hours

of training for the natural hair stylist cosmetology license.  (*Id.* ¶ 44.)  The required coursework

includes 120 clock hours, or 3.6 credit hours, of general instruction in sanitation, sterilization,

bacteriology, shampooing, draping, disorders of hair and scalp, state law, and salon management;

and 180 clock hours, or 5.4 credit hours, of practical instruction in twisting, wrapping, weaving,

extending, locking, braiding, and natural hair styling by hand or mechanical appliances.  (*Id.*)

Tennessee State Board of Cosmetology Rule 0440-1-.14 defines a violation of the Tennessee State

Cosmetology laws as a Class B misdemeanor crime, punishable by fines of up to $1,000 for each day

of continued offense.  (*Id.* ¶ 45.)

Tennessee cosmetology schools either do not teach traditional African hair braiding or

provide only very little and very basic instruction on traditional African hair braiding.  (*Id.* ¶ 47.)

Other techniques covered as part of natural hair stylist training in Tennessee cosmetology schools

have no application in African hair braiding.  (*Id.* ¶ 49.)  Tennessee does not offer a certificate or

license in African hair braiding, though Plaintiffs engage exclusively in hair braiding services.  (*Id.*

¶ 51.) Traditional African hair braiding is part of Plaintiffs' culture and heritage, and they are already

skilled in the art of traditional African hair braiding.  (*Id.* ¶ 48.)  Tennessee's cosmetology laws and

regulations preclude those who are specifically skilled in African hair braiding learned culturally

---

[2] The statute goes on to define the scope of the techniques employed by a "natural hair stylist" as "providing or offering to the general public for compensation any of the following services solely for development or improvement of physical qualities of the natural hair structure: intertwining in a systematic motion to create patterns in a three-dimensional form; inversion or outversion flat against the scalp along the part of a straight or curved row; or extension with natural or synthetic fibers."  (Am. Compl. ¶ 43.)

from lawfully offering their services to the public for compensation without a license. (*Id.* ¶ 53.) Tennessee also refuses to accept certifications and/or licenses issued to African hair braiders by other states. (*Id.* ¶ 65.)[3]

Tennessee's cosmetology laws and regulations, as applied, work a particular and unequal hardship upon practitioners who provide African hair braiding services, impairing their ability to practice their chosen profession. (*Id.* ¶¶ 56, 68.) Plaintiffs Buliguissa Diallo, Deinbou Diallo, and Asia Binta Kebe possess licenses but also must employ others like Plaintiffs Natu Bah, Diariou Diallo, Aminata Kaba, Fatoumata Diallo, Aicha Tchalim, and Mariama Cire Sow, who are unlicensed, to engage in the practice of African hair braiding for compensation in their places of businesses. (*Id.* ¶ 59.) Plaintiffs who employ unlicensed braiders risk punishment, including monetary fines and the suspension and revocation of their natural hair stylist cosmetology licenses. (*Id.*) Plaintiffs Buliguissa Diallo and Asia Binta Kebe have already been issued citations by the Board. (*Id.* ¶ 60.) Plaintiffs who hold proper licenses and own their own businesses will be forced to close because they cannot hire skilled African hair braiders unless the braiders are fully licensed by the state of Tennessee. (*Id.* ¶ 61.) Due to Tennessee's training and licensing requirements, Plaintiffs Bah, Diariou Diallo, Kaba, Fatoumata Diallo, Tchalim, and Sow will be forced to stop braiding hair for compensation. (*Id.* ¶ 64.)

Based on these allegations, Plaintiff have alleged causes of action for the violation of their civil rights pursuant to 42 U.S.C. § 1983. Specifically, Plaintiffs contend that the Tennessee

---

[3] By contrast, Tennessee will issue a license to a manicurist who possesses a license issued by another state and has five years of experience. (Am. Compl. ¶ 65.) Plaintiffs allege that manicurists are primarily persons of Asian descent and other persons outside the Plaintiffs' protected class. (*Id.*)

cosmetology laws and regulations violate their substantive due process rights because they prevent Plaintiffs (and other similarly situated) from pursuing their chosen profession and are not rationally related to public health or safety. The same laws violate Plaintiffs' equal protection rights. Plaintiffs further allege that Tennessee's laws and regulations violate similar due process rights under the Tennessee constitution. Plaintiffs pray for a declaration that Tennessee's cosmetology laws and regulations, as applied, are unconstitutional and violate the Due Process and Equal Protection Clauses of the Fourth and Fourteenth Amendments and similar provisions found in the Tennessee constitution.[4] Plaintiffs also seek a permanent injunction, attorney's fees, and costs.

In their Motion to Dismiss, Defendants argue that Plaintiffs have failed to state their claims under § 1983. Plaintiffs have not alleged a substantive due process or equal protection claim because the Tennessee Cosmetology Act and the Board's rules have a rational basis, i.e. protecting public health, safety, and welfare. The required training ensures that all persons who engage in hair braiding have knowledge of sanitation, sterilization, diseases of the skin and scalp, and other business and health requirements in the State of Tennessee. Defendants cite a number of reports, documenting concerns about the adverse effects of hair braiding.[5] Tennessee's natural hair braiding license requires 300 hours of training as compared to the 1,500 hours of training for a full cosmetologist license in the state. Defendants argue then that the licensure requirements have a rational relationship to the state's legitimate interest in protecting the public health. Additionally,

---

[4] With respect to the named Plaintiffs who do possess the required license from the state of Tennessee, Plaintiffs also seek a declaration that Tennessee law violates the Privileges and Immunities Clause of the United States Constitution.

[5] Defendants are careful to note that the exhibits are not offered to prove the truth of the matters asserted in the reports but rather to demonstrate the existence of the literature itself as a plausible justification for the state of Tennessee's decision to regulate hair braiding.

Defendants argue that rational basis review should apply to Plaintiffs' equal protection claim. The Amended Complaint does not allege that Tennessee law burdens a fundamental right, targets a suspect class, or treats Plaintiffs differently than similarly situated individuals. While the Amended Complaint seems to suggest that manicurists receive more favorable treatment under Tennessee's reciprocity statute, the law applies equally to both manicurists and natural hair stylists. As for Plaintiffs' claims against the Attorney General of the State of Tennessee, the Amended Complaint fails to allege his personal involvement in any action that has harmed Plaintiffs. For these reasons, the Court should dismiss Plaintiff's § 1983 claims.

Defendants finally argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims under the Tennessee constitution. If the Court dismisses the federal claims, then the Court should dismiss Plaintiffs' Tennessee constitutional claims as well. In the alternative, the Court should dismiss the state law claims because they are barred by the Eleventh Amendment. Should the Court reach the merits of the claims, Defendants contend that the Amended Complaint fails to state any of the claims. The Court should dismiss any due process or equal protection claims brought under state law for the same reasons the Court should dismiss Plaintiffs' due process claims under the United States Constitution. Therefore, dismissal of all claims under Rule 12(b)(6) is warranted.

In their amended response in opposition,[6] Plaintiffs argue that their Amended Complaint

---

[6] Plaintiffs filed an initial response to the Motion to Dismiss (D.E. # 23), to which Defendants replied (D.E. # 28). The Court found that Plaintiffs' response brief failed to address the merits of the Motion to Dismiss and actually briefed issues which Defendants had not raised. As a result, the Court ordered Plaintiffs to file an amended response briefing the issues and legal authority raised in the Motion to Dismiss. Plaintiffs have filed their amended response (D.E. # 35-1), and Defendants have filed a supplemental reply (D.E. # 36).

properly alleges the violation of their constitutional rights. Plaintiffs maintain that Tennessee's cosmetology laws and regulations have no rational relationship to Plaintiffs' practice of African hair braiding. The curriculum which leads to the natural hair braiding license includes little instruction on African hair braiding. Plaintiffs argue that training in "shop management," shampooing, wrapping, weaving by means of curling and flat irons, finger waving, cutting, blow drying hair, and other natural hair styling techniques have nothing to do with African hair braiding. Plaintiffs also challenge the medical studies cited by Defendants, which concluded that hair braiding poses health risks to consumers. Plaintiffs have attached other research suggesting that hair braiding is safe and has no causal connection with other diseases of the skin and hair.

Likewise, Plaintiffs argue that the Amended Complaint states an equal protection claim. Plaintiffs explain that their equal protection claim is based on Tennessee's failure to offer a specific African hair braiding license and to recognize hair braiding licenses issued in other states. At the same time, Tennessee grants manicurist licences and under certain circumstances recognizes manicurist licenses issued by other states. Plaintiffs contend that Tennessee has singled out African hair braiders and that Africans are a suspect class. Plaintiffs request an opportunity to prove that the Tennessee legislature enacted the Cosmetology Act out of discriminatory animus. Finally, Plaintiffs argue that the Tennessee Attorney General is a proper party and that the Court has jurisdiction to hear Plaintiffs' Tennessee constitutional claims.

In their reply and supplemental reply briefs, Defendants argue Plaintiffs have not made any allegations to overcome the strong presumption that Tennessee's cosmetology laws and regulations are valid. Plaintiffs have argued that some aspects of the curriculum required for licensure in natural hair braiding are unnecessary to practice traditional African hair braiding. This fact, even if true,

does not mean the law lacks a rational basis. As such, Plaintiffs have failed to state a substantive due process claim. Plaintiffs have likewise failed to state an equal protection claim because they have not alleged that the State of Tennessee has treated them differently than other similarly situated persons. Based on Plaintiffs' briefs in support of their motion for a preliminary injunction, Plaintiffs seem to argue that Tennessee's refusal to recognize certificates issued by other states or its decision to require licensure for natural hair braiding at all somehow violates equal protection. Defendants respond that Tennessee law treats all persons who practice natural hair braiding the same. Without some allegation of disparate treatment, Plaintiffs have failed to allege an equal protection claim. Concerning claims under the Tennessee constitution, Defendants reiterate their position that the Attorney General is not a proper party because Plaintiffs have not alleged how the Attorney General is involved in the issuance of licenses or the enforcement of state cosmetology laws. Thus, the Attorney General should enjoy Eleventh Amendment immunity.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[7] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[8] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to

---

[7] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[8] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

11

all material elements of the claim."[9]  Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[10]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[11]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] "All well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."[14]

## ANALYSIS

### I. Matters Presented Outside of the Pleadings

Both parties have attached exhibits to their briefing on the Motion to Dismiss and argued that

---

[9] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[10] Fed. R. Civ. P. 8(a)(2).

[11] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[12] *Twombly*, 550 U.S. at 555, 570.

[13] *Iqbal,* 556 U.S. at 678.

[14] *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 713 (6th Cir. 2013) (citations omitted).

the evidence supports their position at the pleadings stage. Specifically, Defendants have cited a number of studies related to the health and safety risks posed by the practice of hair braiding. Plaintiffs have attached the affidavit of Plaintiff Diena Diallo as well as an unauthenticated copy of a document purporting to describe Tennessee's licensure examination for natural hair stylists. It does not appear to the Court that the document was issued by the Tennessee Board of Cosmetology or any other agency of the State of Tennessee. Plaintiffs have also cited materials to contest Defendants' claims about the possible adverse health effects of hair braiding. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.[15] The Court retains the discretion to consider or exclude such extrinsic evidence presented with a Rule 12(b)(6) to dismiss.[16]

In this case, the Court declines to consider any matters presented outside of the pleadings for purposes of deciding Defendants' Motion to Dismiss. The facts and exhibits at issue are not referenced or incorporated in any way in Plaintiffs' Amended Complaint. Defendants have asked the Court simply to take judicial notice of the existence of the reports about hair braiding. Defendants contend that the exhibits are not being offered to prove the truth of the matters asserted in the reports, only for the fact that the reports exist. Under the Federal Rule of Evidence 201, a court may take judicial notice of a fact, which is not subject to reasonable dispute, that is, a fact "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

---

[15] Fed. R. Civ. P. 12(d); *see also Jones v. City of Cincinnati*, 521 F.3d 555, 561–62 (6th Cir. 2008).

[16] *Jones*, 521 F. 3d at 561. *See also Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004); *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003).

ready determination by resort to sources whose accuracy cannot reasonably be questioned."[17]  Even when the existence of a record is not in dispute, a court need not take judicial notice of the record where "there is considerable dispute over the significance of [their] contents."[18]  As is evident from the parties' briefing, a dispute exists about the conclusions stated in the medical research Defendants have attached to their Motion to Dismiss.  Furthermore, under the rational basis standard of review, the very existence of a factual dispute over the rationality of a state's economic regulation "immunizes from constitutional attack the [legislative] judgment represented by this statute."[19]  In any event, the Court finds that it is not necessary to take judicial notice of the reports in order to decide the merits of Plaintiffs' constitutional claims.  For their part, Plaintiffs have not shown why it would be proper for the Court to consider the evidence they have adduced to support their claims at the pleadings stage.  Therefore, the Court declines to consider these exhibits in deciding Defendants' Rule 12(b)(6) Motion.

## II. Substantive Due Process

As for the merits, Defendants first seek dismissal of Plaintiff's substantive due process claim.  The Due Process Clause of the Fourteenth Amendment provides that a state may not deprive a citizen of life, liberty, or property without due process of law.[20]  The Fourteenth Amendment "prohibits the government from imposing impermissible substantive restrictions on individual

---

[17] Fed. R. Evid. 201(b).

[18] *United States v. Husein*, 478 F.3d 318, 337 (6th Cir. 2007).

[19] *Vance v. Bradley*, 440 U.S. 93, 111–12 (1979) (quoting *Rast v. Van Deman & Lewis Co.*, 240 U.S. 342, 357 (1916)).

[20] U.S. Const. Amend. XIV § 1.

liberty," for example, a liberty interest to engage in a chosen occupation.[21] "Generally speaking, freedom to choose and pursue a career, to engage in any of the common occupations of life, qualifies as a liberty interest which may not be arbitrarily denied by the State."[22] Such legislation "violates the Due Process Clause where it imposes burdens without any rational basis for doing so."[23] Thus, legislation regulating a profession or trade carries "a presumption of legislative validity, and the burden is on the challenger to show that there is no rational connection between the enactment and a legitimate government interest."[24]

The parties in this case agree that Tennessee's cosmetology laws and regulations are subject to rational basis review. Rational basis is "highly deferential," and statutes fail under this standard of review "only in rare or exceptional circumstances."[25] In cases of this sort, "regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the

---

[21] *See Conn v. Gabbert,* 526 U.S. 286, 291–92 (1999) (recognizing that "the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation").

[22] *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983) (citing *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).

[23] *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010) (quoting *United States v. Comstock*, 560 U.S. 126, 151 (2010) (Kennedy, J., concurring) (internal quotation marks omitted)).

[24] *Am. Exp. Travel Related Servs. Co., Inc. v. Ky.*, 641 F.3d 685, 689 (6th Cir. 2011).

[25] *Doe v. Mich. Dep't of State Police,* 490 F.3d 491, 501 (6th Cir. 2007).

legislators."[26]   An "exquisite evidentiary record" from the state is not required, only "rational speculation" connecting the licensing requirements to a legitimate purpose, even one "unsupported by evidence or empirical data."[27]   In fact, the Supreme Court has explained that under the rational basis standard of review, the reasoning supporting the state's legislative action is "constitutionally irrelevant."[28]   The Sixth Circuit has held that "[e]ven foolish and misdirected provisions are generally valid if subject only to rational basis review."[29]   The Court will uphold the licensing requirements "if there is any reasonably conceivable state of facts that could provide a rational basis."[30]   As such, challengers like Plaintiffs "bringing substantive due process challenges to [licensing] statutes must traverse unusually inhospitable legal terrain."[31]   The question of whether Tennessee's cosmetology licensing scheme lacks a rational basis is an issue of law for the Court.[32]

---

[26] *Am. Exp. Travel Related Servs.*, 641 F.3d at 689 (quoting *United States v. Carolene Prods. Co.,* 304 U.S. 144, 152 (1938)).

[27] *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993).

[28] *R.R. Ret. Bd. v. Fritz,* 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603 (1960)).

[29] *Craigmiles v. Giles*, 312 F.3d 220, 223–24 (6th Cir. 2002).

[30] *Walker v. Bain,* 257 F.3d 660, 668 (6th Cir. 2001).

[31] *Blue Diamond Coal Co. v. Sec'y of Health & Human Servs. (In re Blue Diamond Coal Co.)*, 79 F.3d 516, 521 (6th Cir. 1996) (internal quotation marks omitted) (citing *R.R. Ret. Bd. v. Alton R.R.*, 295 U.S. 330 (1935)).

[32] *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 753–54 (1999) (Souter, J., concurring in part) ("Substantive due process claims are, of course, routinely reserved without question for the court."); *Myers v. Cty. of Orange,* 157 F.3d 66, 74 n. 3 (2d Cir.1998); *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 172 (5th Cir. 1996); *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir. 1991); *Greenbriar, Ltd. v. Alabaster,* 881 F.2d 1570, 1578 (11th Cir.1989).   "This legal question is appropriate for decision in the context of a motion to dismiss."  *Operation Badlaw, Inc. v. Licking Cnty. Gen. Health Dist. Bd. of Health*, 866 F. Supp. 1059, 1066 (S.D. Ohio 1992) *aff'd,* 991 F.2d 796 (6th Cir. 1993).

The Court holds that Plaintiffs' Amended Complaint has failed to state a plausible substantive due process claim. Notably, Plaintiffs have the burden "to establish that the legislature has acted in an arbitrary and irrational way"[33] and the burden to "negative every conceivable basis that might support" Tennessee's cosmetology laws and regulations.[34] Plaintiffs' Amended Complaint does not allege facts to satisfy this standard. Before reaching the merits of Plaintiffs' pleadings, a brief review of the licensing scheme adopted by the state of Tennessee is in order. Under Tennessee law, any person who practices or attempts to practice cosmetology and other disciplines included within the field of cosmetology must hold a license issued by Board of Cosmetology.[35] The state of Tennessee offers licenses in cosmetology and in the specialty areas of aesthetics, manicuring, shampooing, and natural hair styling.[36] "Natural hair styling" is defined to mean

> techniques that result in tension on hair strands such as twisting, wrapping, weaving, extending, locking or braiding of the hair by hand or mechanical appliances, which work does not include the application of dyes, reactive chemicals or other preparations to alter the color or to straighten, curl or alter the structure of the hair. The techniques include providing or offering to the general public for compensation any of the following services solely for development or improvement of physical qualities of the natural hair structure:

---

Moreover, the Court is not required to accept as true Plaintiffs' allegation that Tennessee's cosmetology law lacks a rational basis. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (holding that at the pleadings stage, a court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice").

[33] *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976).

[34] *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973).

[35] Tenn. Code Ann. § 62–4–108. Based on the statutory definitions, "natural hair styling" appears to qualify as a speciality within the larger field of "cosmetology."

[36] § 62–4–110.

(A) Intertwining in a systematic motion to create patterns in a three-dimensional form;

(B) Inversion or outversion flat against the scalp along the part of a straight or curved row; or

(C) Extension with natural or synthetic fibers.[37]

Tennessee requires 1,500 hours of instruction to obtain a cosmetology license, 750 hours of instruction for an aesthetician license, 600 hours for a manicurist license, and 300 hours for a shampooing license.[38]  In order to obtain the natural hair stylist license, Tennessee mandates 300 hours of training, consisting of two parts: 120 clock hours of general instruction in sanitation, sterilization, bacteriology, shampooing, draping, disorders of hair and scalp, state law, and salon management; and 180 clock hours of practical instruction in twisting, wrapping, weaving, extending, locking, braiding, and natural hair styling by hand or mechanical appliances.[39]  Two named Plaintiffs have received citations from the Tennessee Board of Cosmetology for employing braiders who do not hold a natural hair stylist license.

Plaintiffs largely contend that Tennessee law requires them to have a license they can only receive after they complete training they do not actually need in order to practice African hair braiding.  The Amended Complaint emphasizes the cultural significance of traditional African hair braiding and each Plaintiff's long-years of experience and practice in the traditional methods. For instance, Plaintiffs allege that African hair braiding is "a cultural art that is unique to African

---

[37] § 62–4–102(a)(14).

[38] § 62–4–110.

[39] Am. Compl. ¶ 44.

natives" and that "traditional African hair braiding is part of Plaintiffs' culture and heritage and they are already skilled in the art of traditional African hair braiding."[40] Plaintiffs further allege that Tennessee's curriculum in natural hair styling has very little content directly applicable to traditional African hair braiding.[41] Plaintiffs allege that Tennessee cosmetology schools do not teach traditional African hair braiding and the training they do provide has little relevance to African hair braiding, as Plaintiffs practice it.[42]

Even accepting the allegations of the Amended Complaint as true, Plaintiffs have not alleged facts to show that Tennessee lacks a rational basis for its natural hair styling licensing scheme. "A state can require high standards of qualification when regulating a profession but any qualification must have a rational connection with the applicant's fitness or capacity to engage in the chosen

---

[40] Am. Compl. ¶ 48; *see also id.* ¶ 31 ("African hair braiding is so called because it is [sic] has distinct geographic, cultural, historical, and racial roots. The basis for African hair braiding techniques originated many centuries ago in Africa and was brought by Africans into this country, where they have endured and have been expanded upon as a distinct and popular form of hair styling primarily done by and for persons of African descent. African hair braiding continues to be part of the culture in Africa today. All of the Plaintiffs are part of the culture from which African hair braiding originated and continues to be practiced to this day.").

[41] *Id.* ¶ 73.

[42] *Id.* ¶¶ 21 (Plaintiffs and others "are forced to obtain unnecessary, timely and costly training and instruction to obtain natural hairstylist cosmetology licenses with little or no training offered in the traditional cultural art of African hair braiding . . . ."); 47 ("Tennessee natural hair braiding cosmetology schools either do not teach traditional African hair braiding or provide only very little and very basic instruction on traditional African hair braiding."); 49 ("African hair braiding does not consist of techniques taught in natural hair stylist cosmetology schools such as styling, arranging, dressing, curling, waving, permanent waving, washing, cutting, clipping, or trimming hair by the use of scissors, shears, clippers, flatirons, or other appliances; measuring, or forming caps for wigs or hairpieces or both on the human head; or practicing hair weaving or hair fusing or servicing previously medically implanted hair.").

profession."[43]  As the Sixth Circuit recently noted, "[v]ery many are the interests which the state may protect against the practice of an occupation," and each state may use "a licensing system" to carry out its "duty to protect the public from those who seek for one purpose or another to obtain its money."[44]  The Amended Complaint does not actually challenge the required general instruction on topics like sanitation, diseases of the hair, and business management.[45]  The required training in these areas, subjects which make up exactly 40 percent of the classroom time required to receive the natural hair stylist license, appear to be rationally related to the state's interest in the public health and welfare.  In their memorandum, Defendants argue that the prescribed curriculum "promote[s] the State's public health interests because the styling of hair, including African hair braiding, requires knowledge of sanitation, sterilization, diseases of the skin and scalp, as well as an understanding of business and business laws including local and state health requirements."[46]  Without allegations to show why the required general instruction lacks a rational basis, Plaintiffs have failed to state a substantive due process claim as to this part of the required training.

As for the practical training required for the natural hair stylist license, Plaintiffs allege that Tennessee cosmetology schools offer little or no instruction in traditional methods of African hair

---

[43] *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1105 (S.D. Cal. 1999) (citing *Schware v. Bd. of Bar Examiners of New Mexico*, 353 U.S. 232, 238–39 (1957)).

[44] *Liberty Coins, LLC v. Goodman*, No. 13-3012, 2014 WL 1357041, at *7 (6th Cir. Apr. 8, 2014) (quoting *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J., concurring)).

[45] The Amended Complaint does allege that the state of Mississippi offers a certificate in hair braiding which requires only 9 hours of training, all in hygiene.  Am. Compl. ¶ 54(c). Plaintiffs also assert in their brief that the state of Texas issues African hair braiding licenses requiring only 35 hours of instruction.

[46] Defs.' Mem. in Support 5 (D.E. # 21).

braiding, and even if they did, Plaintiffs already possess expertise in African hair braiding from a lifetime of cultural training. The Court holds that Plaintiffs' allegations about these requirements fail to "negative every conceivable basis that might support" them. Even accepting as true Plaintiffs' claim that the cosmetology schools offer little instruction in African hair braiding, this fact pleading does not show that Tennessee lacks any rational basis for requiring Plaintiffs to complete other training and to hold a license to engage in African hair braiding as a commercial enterprise. At least one scholar writing about state regulation of hair braiding has opined that "[t]he most reasonable regulatory regimes [for hair braiding] are those requiring significant technical training, not merely sanitation training and a licensing fee" and cited Tennessee as one of ten states that has "replaced traditional cosmetology licensing requirements with more relevant requirements created specifically for braiders."[47] While the Court does not credit or adopt this opinion to decide this case, this view simply demonstrates that the rationality of Tennessee's licensing requirements is arguable. The strength of the dispute over the reasonableness of Tennessee's natural hair styling requirements is "not within the competency of the courts to arbitrate."[48] On the contrary, "it is the very admission that the facts are arguable that immunizes from constitutional attack the [legislative] judgment represented by this statute."[49]

---

[47] Monica C. Bell, *The Braiding Cases, Cultural Deference, and the Inadequate Protection of Black Women Consumers*, 19 Yale J.L. & Feminism 125, 150–51 (2007).

[48] *Vance*, 440 U.S. at 111–12 (quoting *Rast v. Van Deman & Lewis Co.*, 240 U.S. 342, 357 (1916)).

[49] *Id.* For the same reasons, Plaintiffs' other allegations calling into doubt the wisdom of Tennessee's regulation of the hair braiding industry does not "negative" the rationality of the licensing law. Plaintiffs allege that African hair braiding opens up entrepreneurial opportunities for women like Plaintiffs. Am. Compl. ¶¶ 55, 64. Plaintiffs further allege that they will be forced to close their businesses in Tennessee and relocate to other states where they can practice

Moreover, other fact pleadings in the Amended Complaint tend to show a rational relationship between Tennessee's required curriculum and the practices that make up traditional African hair braiding.[50]  According to the Amended Complaint, Tennessee requires 180 hours of practical training in natural hair styling consisting of "twisting, wrapping, weaving, extending, locking, braiding, and natural hair styling by hand or mechanical appliances."[51]  These subjects, which make up 60 percent of the natural hair styling curriculum, bear some similarity to African hair braiding, which the Amended Complaint defines as "braiding, locking, twisting, weaving, and cornrowing or otherwise physically manipulating hair without the use of chemicals that alter the physical characteristics of the hair."[52]  Plaintiffs concede as much in their briefing by arguing that African hair braiding is "similar to hair braiding techniques offered in Tennessee cosmetology schools," just not the same.[53] In order to survive rational basis review, "[t]he legislature need not produce mathematical precision in the fit between justification and means when enacting economic legislation."[54]  Plaintiffs' challenge then boils down to how much the practical curriculum overlaps

---

African hair braiding under more lenient licensing laws.  *Id.* ¶¶ 56, 61, 63.  While Plaintiffs' police arguments clearly have merit, these facts go to judgments only the Tennessee legislature can make, not the Court.

[50] *Am. Exp. Travel Related Servs. Co.*, 641 F.3d at 694 (noting that the plaintiff's "own statistics" tended to support the commonwealth of Kentucky's legislative judgment that "a seven-year presumptive abandonment period is appropriate for traveler's checks").

[51] Am. Compl. ¶ 44.

[52] *Id.* ¶ 29.

[53] Pls.' Am. Resp. 9.

[54] *Am. Exp. Travel Related Servs. Co.*, 641 F.3d at 693–94 (citation omitted); *Ziss Bros. Constr. Co., v. City of Independence, Ohio,* 439 F. App'x 467, 476 (6th Cir. 2011) ("Government action subject to rational basis review will not be deemed to lack rational justification simply

with their own culturally-learned methods of African hair braiding. In other words, Plaintiffs contest the lines drawn by the Tennessee legislature to regulate the business of cosmetology and hair styling in the state of Tennessee.

As the Supreme Court has remarked, "even if petitioners have found a superior system, the Constitution does not require the [state] to draw the perfect line nor even to draw a line superior to some other line it might have drawn. It requires only that the line actually drawn be a rational line."[55] While Plaintiffs' allegations plausibly suggest an imperfect fit between Tennessee's licensing scheme and Plaintiffs' practice of African hair braiding, the Amended Complaint does not show that Tennessee's requirements are irrational. The Tennessee legislature has made the judgment that 180 hours of practical instruction in various skills related to natural hair styling will adequately protect consumers receiving natural hair styling services, including African hair braiding, in Tennessee. And unlike other states, Tennessee does not require persons who offer traditional African hair braiding to hold a full cosmetology license and complete the 1,500 hours of instruction required under Tennessee law to obtain that license.[56] In a similar fashion, the legislature has determined that 750 hours of training is appropriate for licensure as an aesthetician in Tennessee and

_____

because it is not made with mathematical nicety or because in practice it results in some inequality.").

[55] *Armour v. City of Indianapolis, Ind.*, 132 S. Ct. 2073, 2083 (2012).

[56] *Cf. Clayton v. Steinagel*, 885 F. Supp. 2d 1212, 1215 (D. Utah 2012) (holding at summary judgment that Utah's requirement for African hair braiders to complete 2,000 hours of instruction in cosmetology failed rational basis review where state admitted that 1,400 to 1,600 hours of the training were "irrelevant to African hairbraiding"); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1105 (S.D. Cal. 1999) (holding at summary judgment that California's requirement for African hair braiders to complete 1,600 hours of instruction in cosmetology failed rational basis review and questioning whether African hair braiding met the state's definition of cosmetology at all).

600 hours is sufficient for licensure as a manicurist. In each instance the Tennessee legislature has made a policy judgment about what is required to achieve the state's interests in public health and safety for specific types of activities, and in each instance the Tennessee legislature could have required more or less training for each license. The fact remains that it is the proper role of the Tennessee legislature to make these judgments in creating its licensing scheme, and none of the allegations in the Amended Complaint suggest that Tennessee lacked a rational basis for the requirements it has selected for the natural hair styling license. Therefore, the Court concludes that the Amended Complaint fails to state a substantive due process claim.

Plaintiffs make a number of additional arguments related to their substantive due process claim, none of which the Court finds convincing. Plaintiffs have argued that compelling them to go through "unnecessary and unwarranted" training "is akin to indenture[d] servitude."[57] Plaintiffs have cited no legal authority to show how this claim might support their constitutional challenge to Tennessee's cosmetology laws and regulations. As such, the Court declines to consider this passing reference to indentured servitude further. Plaintiffs also argue that they are entitled to discovery on the legislative history of the Tennessee Cosmetology Act and Tenn. Code Ann. § 62–4–110 and an opportunity to show that the possible health risks associated with hair braiding did not actually motivate the legislature to regulate the practice of braiding. The lack of discovery, however, is not an independent reason to deny a Rule 12(b)(6) motion, which serves to test the sufficiency of the pleadings.[58] More importantly, under rational basis review, Tennessee, "has no obligation to produce

_____

[57] Pls.' Am. Resp. 9.

[58] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Cox v. Shelby*

evidence to sustain the rationality of a statutory classification" because its "legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."[59]   As such, Plaintiffs' request for discovery about the legislature's actual justifications for the requirements is not well taken.

Finally, Plaintiffs's reliance on the Sixth Circuit's decision in *Craigmiles v. Giles*, a case in which the Court of Appeals held Tennessee's Funeral Directors and Embalmers Act to be unconstitutional, is misplaced.  In *Craigmiles*, the Sixth Circuit concluded that "a provision of the Tennessee Funeral Directors and Embalmers Act (FDEA) that forbids anyone from selling caskets without being licensed by the state as a 'funeral director'" had no rational basis and therefore violated substantive due process.[60]   The Tennessee law's only purpose appeared to be to create "a significant barrier to competition in the casket market" in the state of Tennessee.[61]   The Sixth Circuit held that "protecting a discrete interest group from economic competition is not a legitimate governmental purpose."[62]   In the case at bar, by contrast, Plaintiffs do not allege that Tennessee enacted its licensing scheme as a form of economic protectionism.  No such allegation is made in Plaintiffs' Amended Complaint.[63]   The Court holds then that this is not a case where a state licensing

---

*State Cmty. Coll.*, 48 F. App'x 500, 503 (6th Cir. 2002) ("A 12(b)(6) motion simply tests the sufficiency of the pleadings, and does not resolve the facts of the case.").

[59] *Heller v. Doe by Doe*, 509 U.S. 312, 320–21 (1993).

[60] *Craigmiles v. Giles*, 312 F.3d 220, 228–29 (6th Cir. 2002).

[61] *Id.* at 228.

[62] *Id.* at 224.

[63] Plaintiffs have quoted an article authored by the Institute for Justice, which states as follows: "The fact that occupational licensing laws are typically enforced by boards comprised of

board has acted to protect the interests of its own licensed professionals and to create undue obstacles for others who seek to enter the profession in that state. Therefore, the Court finds *Craigmiles* to be distinguishable. For all of these reasons, Defendants' Motion to Dismiss the substantive due process claim is **GRANTED**.

## III. Equal Protection Claims

Defendants next seek dismissal of Plaintiff's equal protection claim. The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."[64] The purpose of the Fourteenth Amendment is "to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."[65] Where an equal protection claim does not concern a suspect class or a fundamental right, a state's action is subject to rational basis review, and a court will "sustain the government action in question unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions

---

practitioners within the regulated industry . . . confers the coercive power of government upon a cartel whose vested interest lies in excluding as many competitors as possible." Pls.' Resp. in Opp'n 6–7 (D.E. # 23). However, the article is not part of the pleadings, and so the Court will not consider the publication in its analysis of Defendants' Motion to Dismiss. Furthermore, Plaintiffs simply quote the article at length without any discussion of how it applies to their substantive due process claims.

[64] U.S. Const. amend. XIV, § 1.

[65] *Sadie v. City of Cleveland*, 718 F.3d 596, 601-02 (6th Cir. 2013) (quoting *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923)).

were irrational."[66]  "Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."[67]

The Court holds that the Amended Complaint fails to state a plausible equal protection claim. Plaintiffs have not alleged how they are being treated differently than other similarly situated individuals.  The Supreme Court's "equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others."[68]  "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."[69]  The Sixth Circuit has described disparate treatment as "[t]he threshold element of an equal protection claim."[70]  In support of their equal protection claim, Plaintiffs allege that Defendant have violated their equal protection rights by denying them "an equal opportunity to lawfully offer their services to meet public demand" for African hair braiding and the "right to engage in a profession or occupation."[71]  Plaintiffs allege

---

[66] *Id.* (citation and internal quotation marks omitted).

[67] *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

[68] *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008).

[69] *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th Cir.2011); *see also Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.").

[70] *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 329 (6th Cir. 2013) (quoting *Satawa v. Macomb Cnty. Road Comm'n,* 689 F.3d 506, 528 (6th Cir. 2012)).

[71] Am. Compl. ¶ 74.

no facts to assert how Defendants have treated them differently than other similarly situated individuals, for example, that Defendants have permitted other similarly situated to engage in commercial African hair braiding without a license.  Without such an allegation, Plaintiffs have failed to state an equal protection claim.

It is true that the Amended Complaint alleges in one paragraph that Tennessee "refuses to accept certification and/or licenses issued by other states to African Hair Braiders" but grants manicurists, who "primarily consist of persons of Asian descent and other persons outside of Plaintiffs' protected class," a reciprocal license if the manicurist has five years' experience and a license from another state.[72]  According to the Cosmetology Act, "[u]pon receipt of a fee of fifty dollars ($50.00), the board may, in itsdiscretion, grant a license without examination to any applicant who:

> (1) Holds a valid license issued by another state or the District of Columbia and has substantially met the qualifications for licensure in this state; or
> (2) Furnishes satisfactory proof that the applicant has continuously and lawfully engaged in the occupation or practice for which a license is applied for a period of at least five (5) years immediately preceding the date of application.[73]

Construing this allegation in the light most favorable to Plaintiffs, the single statement could suggest that Defendants selectively enforced Tennessee's reciprocal licensing law against persons like Plaintiffs who engage in African hair braiding.

"Selective enforcement claims are judged according to ordinary Equal Protection standards,

---

[72] Am. Compl. ¶ 65.

[73] Tenn. Code Ann. § 62–4–116.

which require a petitioner to show both a discriminatory purpose and a discriminatory effect."[74] Plaintiffs' single allegation, however, does not make out a plausible equal protection claim. First and foremost, Plaintiffs have not alleged that any named Plaintiff possesses a hair braiding license issued by another state much less that any Plaintiff actually sought and was denied a reciprocal license from the state of Tennessee. As such, Plaintiffs have not alleged an injury in fact fairly traceable to Defendants' alleged practice of denying hair braiders reciprocity.[75] Second, Plaintiffs have not alleged any facts to show that African hair braiders as a class, including Plaintiffs, are similarly situated for purposes of reciprocal licensing to manicurists as a class. As previously discussed, Tennessee has two distinct sets of licensing requirements for manicurists and natural hair stylists. Without some additional showing of similarity, Plaintiffs have failed to plead this specific kind of equal protection claim.

In their briefing Plaintiffs further assert that Defendants have targeted Africans and that enforcement of the laws has the effect of forcing African business owners out of business.[76] Plaintiffs go on to assert that the Tennessee legislature acted with discriminatory animus in passing the law (presumably the requirements for the natural hair stylist license) and that Plaintiffs are

---

[74] *Faith Baptist Church*, 522 F. App'x at 329 (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)).

[75] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) ("The plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.").

[76] Pls.' Am. Resp. 15.

entitled to discovery on the motives of the legislature.[77] The problem with Plaintiffs's argument lies in the fact that none of these allegations appear in the Amended Complaint. Under the circumstances, "[t]he appropriate method for adding new factual allegations to a complaint is not via [a pleading party's] brief, but by filing an amended complaint."[78] Plaintiffs have not requested leave to amend, and the Court has already permitted Plaintiffs' leave to amend once in response to Defendants' first motion to dismiss. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to this claim.

## IV. Remaining Issues Under State Law

Defendants have also argued that the Court lacks jurisdiction over Plaintiffs' claims for violation of the Tennessee Constitution and that the Tennessee Attorney General is not a proper party to this action. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction "over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[79] Even so, the Court has the discretion to decline to exercise supplemental jurisdiction over a claim when "the district

---

[77] Plaintiffs seem to argue then that Tennessee has targeted them because of their national origin, an allegation that would require strict scrutiny of Tennessee's legislative enactments. *Miller v. Johnson*, 515 U.S. 900, 904 (1995) ("Racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination."). And yet Plaintiffs still argue that only rational basis review should apply to their equal protection claim. Pls.' Am. Resp. 15 ("In the instant case, this court must look to see whether there is a rational basis for requiring African hairstyles to receive 300 hours of technical training required by the Tennessee cosmetology act."). The Court need not resolve this apparent contradiction because Plaintiffs have not actually alleged this claim in their pleadings.

[78] *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 399 (6th Cir. 2013).

[79] 28 U.S.C. § 1367(a).

court has dismissed all claims over which it has original jurisdiction."[80]  Because the Court is dismissing Plaintiffs' § 1983 claims for violation of their federal constitutional rights, the Court declines to reach the merits of Plaintiffs' claims under Tennessee law.  Therefore, those claims are dismissed without prejudice.  Furthermore, the Court need not decide whether the Attorney General of the state of Tennessee is a proper party to this action.

**V. Plaintiffs' Motion for Preliminary Injunction**

Plaintiffs have filed a Motion for Preliminary Injunction (D.E. # 24), which the parties have now fully briefed.  Because the Court holds that the Amended Complaint fails to state claim upon which relief may be granted, Plaintiffs' Motion for Preliminary Injunction is **DENIED** as moot.

<u>CONCLUSION</u>

The Court concludes that Plaintiffs' Amended Complaint fails to state a substantive due process or equal protection claim under the United States Constitution.  Plaintiffs have failed to allege facts showing that the state of Tennessee lacked a rational basis for requiring persons like Plaintiffs who engage in African hair braiding services for the public to complete training and hold a license as a natural hair stylist.  In the absence of allegations that others similarly situated received more favorable treatment, Plaintiffs have failed to state an equal protection claim.  The Court declines to exercise supplemental jurisdiction over any of Plaintiffs' remaining state law claims.  Therefore, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiffs' Motion for Preliminary Injunction is **DENIED** as moot.

---

[80] § 1367(c)(3).

**IT IS SO ORDERED.**

s/ S. Thomas Anderson

S. THOMAS ANDERSON

UNITED STATES DISTRICT JUDGE

Date: June 10, 2014.